UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

GREGORY JOSEPH NELSON,

Plaintiff,

v.

BENJAMIN FRAHS; TRAVIS TAYLOR; C.O. DODGE; SGT. MEZO; C.O. NEBECKER; TYLER NICODEMUS; and C.O. PROCHASKA,

Defendants.

Case No. 1:22-cv-00068-BLW

**MEMORANDUM DECISION AND ORDER**

Plaintiff Gregory Joseph Nelson is a prisoner in the custody of the Idaho Department of Correction. Plaintiff is proceeding pro se and in forma pauperis in this civil rights matter.

Plaintiff claims that the Defendant correctional officers failed to protect him from his cellmate, who pulled Plaintiff off of his bunk in February 2020. Plaintiff has been allowed to proceed on Eighth Amendment claims under 42 U.S.C. § 1983 against Defendants Frahs, Taylor, Dodge, Mezo, Nebecker, Nicodemus, and Prochaska. All other claims against all other Defendants have been dismissed. *See Memo. Dec. and Order*, Dkt. 81, at 6.

Defendants have filed a Motion for Summary Judgment. Plaintiff opposes Defendants' Motion for Summary Judgment except with respect to Defendant Prochaska. *See Pl. Resp. to Mot. Summ. J.*, Dkt. 136, at 1.

In addition to responding to Defendants' Motion for Summary Judgment, Plaintiff has also filed a Motion to Reopen Discovery and to Compel Disclosures, as well as a Motion for Appointment of Counsel for the limited purpose of reviewing those disclosures. Dkts. 138, 139.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1(d). Accordingly, and for the reasons that follow, the Court will deny Plaintiff's Motions and grant Defendants' Motion for Summary Judgment.

## PLAINTIFF'S MOTION TO REOPEN DISCOVERY AND TO COMPEL DISCLOSURES, AND PLAINTIFF'S MOTION FOR APPOINTMENT OF LIMITED PURPOSE COUNSEL

Discovery in this matter closed on August 29, 2025. *See* Dkt. 119 at 2. Plaintiff filed his Motion to Reopen Discovery and to Compel Disclosures on March 26, 2026 (mailbox rule)—nearly seven months after the close of discovery. *See* Dkt. 138.

Once the Court sets a case management schedule pursuant to Rule 16, the "schedule may be modified only for good cause and with the judge's consent."

Fed. R. Civ. P. 16(b)(4). The focus of the good cause analysis is on "the diligence of the party seeking the extension." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Thus, the issue under Rule 16(b) is whether the "pretrial schedule ... 'cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id.* (quoting Fed. R. Civ. P. advisory committee's notes (1983 amendment)) (internal quotation marks omitted). "If that party was not diligent, the inquiry should end." *Id*.

Additionally, "[a]lthough the Federal Rules of Civil Procedure place no time limit on the outside date for the filing of a motion to compel discovery, motions to compel filed after the close of discovery generally are deemed untimely." *Green Aire for Air Conditioning W.L.L. v. Salem*, No. 1:18-cv-00873-LJO-SKO, 2020 WL 58279, at *2 (E.D. Cal. Jan. 6, 2020) (unpublished) (internal quotation marks omitted). "[D]istrict courts within the Ninth Circuit have regularly denied motions to compel when those motions were filed after the close of discovery." *Peck v. Cincinnati Ins. Co.*, No. 1:14-cv-00500-BLW, 2016 WL 9308018, at *2 (D. Idaho May 3, 2016) (unpublished) (citing *Kizzee v. Walmart, Inc.*, No. CV-10-0802-PHX-DGC, 2011 WL 3566881 (D. Ariz. Aug. 15, 2011) (denying motion to compel filed three months after the close of discovery and after motions for summary judgment had been filed); *Skinner v. Ryan*, No. CV-09-2152-PHX-SMM (LOA), 2010 WL 4602935 (D. Ariz. Nov. 5, 2010) (denying motion to compel

filed over a month after the deadline for bringing discovery disputes to the attention of the court); *Christmas v. MERS*, No. 2:09-cv-01389-RLH-GWF, 2010 WL 2695662 (D. Nev. July 2, 2010) (denying motion to compel filed after deadline for discovery and dispositive motions).

When faced with a motion to compel that is filed after the close of discovery, courts consider a number of factors in deciding whether the motion should nonetheless be considered:

> (1) the length of time since the expiration of the deadline, (2) the length of time that the moving party has known about the discovery, (3) whether the discovery deadline has been extended, (4) the explanation for the tardiness or delay, (5) whether dispositive motions have been scheduled or filed, [6] the age of the case, [7] any prejudice to the party from whom late discovery was sought, and [8] disruption of the court's schedule.

*Days Inn Worldwide, Inc. v. Sonia Invs.*, 237 F.R.D. 395, 398 (N.D. Tex. 2006) (collecting cases looking to discovery deadline date to determine whether a motion to compel is timely filed); *see also Rogers v. Brauer Law Offices, PLC*, CV–10–1693–PHX–LOA, 2011 WL 3665346, at *4 (D. Ariz. Aug. 22, 2011) (unpublished) (collecting Ninth Circuit cases where courts have denied discovery motions filed after the discovery deadline).

Because granting Plaintiff's motion to reopen discovery and to compel would result in a "de facto modification of the scheduling order," *Rogers*, 2011 WL 3665346 at *4, the Court examines the *Days Inn* factors to determine whether

there is good cause to modify the Court's August 29, 2025 discovery deadline. *See* Fed. R. Civ. P. 16(b)(4).

Plaintiff waited nearly seven months after the close of discovery—and nearly five months after the Court rejected Plaintiff's contention that discovery remained ongoing—to file his Motion. *See* Dkt. 119. Though the discovery deadline has not previously been extended, the amount of time between the close of discovery and Plaintiff's Motion weighs against granting the Motion.

Plaintiff states he was diligent in seeking the requested disclosures and that he should be excused from the delay in filing his Motion on the basis of "excusable neglect." Dkt. 138 at 2. Plaintiff requested the discovery at issue—an investigative report supposedly prepared by Sergeant Ryan Anderson—several times. However, Defendants responded that there is no such report. Plaintiff does not believe Defendants and thinks they are lying, but he offers no evidence to rebut Defendants' statement that no report by Anderson exists, and Defendants have produced several investigative reports by other prison officials. Plaintiff's explanation for his delay in filing his Motion does not weigh in favor of reopening the discovery period.

Dispositive motions are ripe for adjudication, and this case is already over four years old. Though the Court has not identified any specific prejudice to the

Defendants if the discovery period is reopened, the Court's busy schedule would be unduly disrupted were the Court to do so.

Consideration of the *Days Inn* factors leads the Court to conclude that Plaintiff's Motion to Reopen Discovery and to Compel Disclosures is untimely without adequate justification. Therefore, the Motion will be denied.

Plaintiff's Motion for Appointment of Counsel asks for an attorney for the limited purpose of supervising and reviewing the discovery Plaintiff seeks in his Motion to Reopen Discovery and to Compel Disclosures. Because that Motion will be denied, Plaintiff's Motion for Appointment of Counsel will also be denied.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 1. Standards of Law Governing Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. In other words,

"summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

In resolving a summary judgment motion, the Court must consider the facts in the light most favorable to the non-moving party, unless the non-moving party's version of the facts is "blatantly contradicted by the record[] so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If such a blatant contradiction exists, then there is no "genuine" dispute as to that fact. *Id*.

The moving party bears the initial burden to show that each material fact cannot be disputed. Material facts are those "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To show that the material facts are not in dispute, the moving party may cite to particular parts of materials in the record or show that the non-moving party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). Where, as here, the party moving for summary judgment would not bear the burden of proof at trial, that party may prevail simply by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

If the moving party meets this initial responsibility, the burden then shifts to the non-moving party to establish that a genuine dispute as to any material fact does indeed exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986). "Once a moving party has sufficiently supported its motion for summary judgment, the non-moving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Liberty Lobby*, 477 U.S. at 247–48. Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact. In other words, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Id*. at 252. Statements in a brief, unsupported by the record, cannot be used to create a dispute of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

The Court must consider "the cited materials" in considering a motion for summary judgment, but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Rather, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003); *see also Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.

1996) (stating that, once the moving party meets its initial burden, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment.") (internal quotation marks omitted). That is, "if a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own." *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

In opposing a motion for summary judgment, the non-moving party must submit at least "some competent evidence," such as a "declaration, affidavit, [or] authenticated document," to support his allegations or to dispute the moving party's allegations. *Soto v. Sweetman*, 882 F.3d 865, 873 (9th Cir. 2018) (upholding grant of summary judgment against pro se inmate because the "only statements supporting [plaintiff's] ... argument are in his unsworn district court responses to the defendants' motion for summary judgment and to the district court's show-cause order"). If the non-moving party fails to produce such evidence, or if the evidence produced is not enough to create a genuine issue of material fact, the Court "is not required (or even allowed) to assume the truth of the … allegations in the complaint." *Butler*, 370 F.3d at 963.

Only admissible evidence may be considered on summary judgment. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Affidavits or

declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence," does not create a genuine dispute of material fact. *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences that can be drawn from the evidence must be drawn in the light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630–31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court must grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

In cases involving pro se inmates, courts liberally construe the pleadings and briefs and "should avoid applying summary judgment rules strictly." *Thomas v.*

*Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). However, though pro se inmates are exempted "from *strict* compliance with the summary judgment rules," they are not exempted "from *all* compliance." *Soto*, 882 F.3d at 872.

**2. Factual Background**

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court has included Plaintiff's version of facts, insofar as that version is not contradicted by clear documentary evidence in the record. *See Scott*, 550 U.S. at 380.

At the time of the events giving rise to Plaintiff's claims, Plaintiff was housed on D-Block in the Idaho State Correctional Center. D-Block is a protective custody unit, housing inmates who "cannot live in general population due to debts, gang issues, or other conflicts." *Amended Declaration of Tyler Nicodemus ("Am. Nicodemus Decl.")*, Dkt. 111, ¶ 5.

On February 10, 2020, Plaintiff filed a grievance objecting to the denial of his request to transfer to another housing assignment. *Ex. to Declaration of Gregory Nelson ("Nelson Decl.")*, Dkt. 133 at 14. Plaintiff described that request as seeking to be "moved back to [his] original housing assignment" after he was released from segregation pending investigation. *Id*. This grievance did not mention any reason for Plaintiff's transfer request other than that he preferred to be

returned to his previous cell. It did not suggest that Plaintiff was afraid of any other inmate. *Id*.

On February 20, 2020, Plaintiff spoke to a non-defendant correctional officer and asked if he would be moved to A-Block based on an incident that caused Plaintiff to be segregated pending investigation. *Ex. A to Declaration of Sheryl ("LaFlamme Decl.")*, Dkt. 103-3. Though it is not clear precisely what the incident was, Plaintiff states that another inmate had forged Plaintiff's signature in an attempt to steal money. *Pl.'s Memo. in Opp. to Mtn. Summ. J.*, Dkt. 136, at 4. The non-defendant correctional officer responded to Plaintiff's request by stating that, because Plaintiff did not receive a Disciplinary Offense Report ("DOR") for the incident, "he should be fine," apparently meaning that Plaintiff would no longer be segregated pending investigation or would not be transferred to A-Block. *Ex. A to LaFlamme Decl*. The prison record documenting this conversation does not state that Plaintiff mentioned any threat posed by another inmate.

Sometime prior to February 23, 2020, Plaintiff's cellmate, Inmate Fisher, called Plaintiff a "faggot" and threatened to "punch Plaintiff in his dick." *Am. Compl*., Dkt. 76, ¶ 61 (internal quotation marks omitted). Fisher later made a second, more general threat to punch Plaintiff. *Ex. 1 to Second Declaration of Megan Anderson ("Pl. Depo.")* at 37–38.

Plaintiff informed John Naslund about the threats in an email dated February 23, 2020. In that email, Plaintiff stated that "no staff" took a report on the potential threat to Plaintiff posed by Fisher. *Ex. to Nelson Decl*., Dkt. 133, at 13. Plaintiff did not identify any prison official by name in the email as someone he spoke to about Fisher's threats.

At one point, Plaintiff pressed a call button in his cell and stated that Fisher was threatening Plaintiff. Plaintiff does not disclose the date of this verbal report other than that it was sometime prior to his February 23 email to Naslund. *Pl. Depo*. at 50. Plaintiff was taken to Defendant Correctional Officer Mezo's office. On the way to see Mezo, Plaintiff told Defendant Correctional Officer Nebecker and an unidentified officer about Fisher's threat to punch Plaintiff. *Am. Compl*. ¶ 29–30.

Once in Mezo's office, Plaintiff reported Fisher's threats and asked Mezo to move either Fisher or Plaintiff himself to another cell. Mezo tried to separate Plaintiff from Fisher, but Mezo's move request was denied. *Id*. at 20–21; *Am. Compl*. ¶ 35.

Plaintiff believes it was the shift commander who denied Mezo's request to separate Plaintiff from Fisher. Plaintiff "assum[es]" that the shift commander that day was Defendant Nicodemus, *Pl. Depo.* at 21, but there is no evidence to support this assumption. Nicodemus was not assigned to Plaintiff's housing unit and only

occasionally covered that unit when the assigned shift commanders were on leave. *Am. Nicodemus Decl*. ¶ 13. Uncontroverted evidence shows that the "regularly assigned shift commander" during this time period was non-defendant Lieutenant Lau. *Id*. ¶ 14; *Ex. B, C, and F to LaFlamme Decl*., Dkts. 103-4, 103-5, 103-8.

Plaintiff told Defendant Correctional Officer Dodge about Fisher's threats. *Am. Compl*. ¶ 59–61. Dodge told Plaintiff he was unable to get him or Fisher moved. *Id*. ¶ 72–73. Dodge was not the "move coordinator" and had no authority to transfer inmates from their assigned cells. *Ex. 4 to First Declaration of Megan Anderson ("First Anderson Decl.")*, Dkt. 73-5 at 27. Plaintiff also informed Defendant Correctional Officer Frahs about Fisher's threats. *Pl. Depo*. at 37. Frahs responded, "I've been briefed." *Id*. at 38.

On February 26, 2020, Fisher pulled Plaintiff off of his bunk and onto the floor, injuring Plaintiff. Defendant Correctional Officer Frahs responded to the incident. Plaintiff told Frahs Fisher had pulled him off his bunk, but Fisher at that time said Plaintiff had fallen off the bunk. *Ex. B to LaFlamme Decl*., Dkt. 103-4, at 2. The incident was not caught on video due to "camera placement." *Id*.

Shift commander Lieutenant Lau separated Plaintiff from Fisher but, because there was no evidence to corroborate which of the two men were telling the truth, did not initially charge Fisher with a DOR. *Am. Nicodemus Decl*. ¶¶ 14–

17. Plaintiff and Fisher were placed in different cells in the same housing unit. *Id.* ¶ 15; *Ex. B to LaFlamme Decl.*, Dkt. 103-4, at 2.

On March 2, 2020, however, Fisher confessed that he had, indeed, pulled Plaintiff off his bunk on February 26. Fisher was charged with a DOR for this misconduct and placed in segregation. *Ex. D and E to LaFlamme Decl.*, Dkt. 103-6 at 2–3 and Dkt. 103-7 at 2.

Also on March 2, Plaintiff told another inmate that staff was "not keeping him safe." *Ex. F to LaFlamme Decl.*, Dkt. 103-8, at 2. After the other inmate informed Defendant Frahs about Plaintiff's statement, Frahs investigated by speaking to Plaintiff. Plaintiff acknowledged saying that he felt staff was not keeping him safe but also told Frahs that Plaintiff felt "safe in his current situation and ha[d] no issues." *Id.*

In a response to a grievance regarding the February 26 incident, non-defendant Correctional Officer David Dietz stated that Plaintiff had been asking to "pick" his cell assignment for several weeks before the incident. *Ex. 4 to First Anderson Decl.*, Dkt. 73-5, at 23. According to staff to whom Plaintiff reported Fisher's threats, the officers did not find Plaintiff's reports of Fisher's threats to be credible. Instead, the officers "perceived [Plaintiff's] concerns … as an attempt to pick where [Plaintiff] live[d] and who [Plaintiff] live[d] with." *Id.*

**3. Defendants Are Entitled to Summary Judgment**

Defendants contend summary judgment should be granted because (1) Defendants did not act with deliberate indifference to a substantial risk of serious harm, (2) Defendants are entitled to qualified immunity on Plaintiff's claims for damages, and (3) Plaintiff's claims for injunctive relief would violate the Prison Litigation Reform Act. For the reasons that follow, the Court concludes that Plaintiff cannot show deliberate indifference on the part of Defendants. Thus, the Court does not reach Defendants' other arguments.

***A. Standards of Law Applicable to Plaintiff's Claims***

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

That is, prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted). A plaintiff may also seek injunctive relief from officials who have direct responsibility in the area in which the plaintiff seeks relief. *See Rounds v. Or. State Bd. of Higher Educ*., 166 F.3d 1032, 1036 (9th Cir. 1999).

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment and guarantees the right to minimally adequate conditions of confinement. "[T]he Constitution does not mandate comfortable prisons, and prisons … which house persons convicted of serious crimes[] cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, though prison conditions may be restrictive—even harsh—without violating the Eighth Amendment, prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Id.* at 347; *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

To state a claim under the Eighth Amendment, a prisoner must show that he was "incarcerated under conditions posing a substantial risk of serious harm" or that he was deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

As for the objective prong of the analysis, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the deprivation alleged must be objectively sufficiently harmful or, in other words, sufficiently "grave" or "serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see Whitley*, 475 U.S. at 319 ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.") (internal quotation marks and alteration omitted).

With respect to the subjective prong of an Eighth Amendment violation, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319.

To exhibit deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cty. of*

*Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro*, 833 F.3d 1060. On the other hand, if an inmate "presents evidence showing that a substantial risk … was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and if "the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Farmer*, 511 U.S. at 842–43 (internal quotation marks omitted).

Even prison officials who *did* actually know of a substantial risk to inmate health or safety will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844. "A prison official's duty under the Eighth Amendment is to ensure reasonable safety," not perfect safety, and this standard "incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Id*. at 844–45 (internal citations and quotation marks omitted).

Deliberate indifference focuses on a defendant's intent. Therefore, a defendant who does not have full control over the circumstances of which the plaintiff complains cannot be said to act with deliberate indifference if that defendant "accomplished what could be accomplished within the limits of his authority." *Williams v. Bennett*, 689 F.2d 1370, 1387–88 (11th Cir. 1982). Personal

liability under § 1983 "cannot be based on prison conditions beyond the control of a defendant." *Pinto v. Nettleship*, 737 F.2d 130, 133 (1st Cir. 1984).

If an inmate faces a "threat of serious harm or injury" from another inmate, prison officials who act with deliberate indifference to that threat are subject to liability under § 1983. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986); *see also Farmer*, 511 U.S. at 833 ("Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course.") (internal citation and alterations omitted). Deliberate indifference in the context of a failure-to-protect claim does not require that a prison official knew the plaintiff "was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843. However, the deliberate indifference standard does mean that even an obvious and substantial risk of assault by one inmate against another does not result in liability so long as the defendant official was not subjectively aware of that risk. *Id.* at 844.

### ***B. Plaintiff Cannot Show That Defendants Acted with Deliberate Indifference in Violation of the Eighth Amendment***

Even if, prior to the February 26, 2020 incident, Plaintiff informed every Defendant of Fisher's threats, Plaintiff cannot establish that any Defendant was subjectively aware of a substantial risk of harm posed by Fisher.

Defendants have submitted evidence that they subjectively believed that Plaintiff's reports of Fisher's threats were not credible. Instead, they thought Plaintiff was attempting to manipulate his housing assignment. *Ex. 4 to First Anderson Decl.*, Dkt. 73-5 at 23. This belief was supported by Plaintiff's two previous attempts to be moved. In those requests, Plaintiff did not mention any physical threat or fear but, instead, merely expressed a desire for a different housing assignment. *Id.*; *Ex. to Nelson Decl.*, Dkt. 133, at 14; *Ex. A to LaFlamme Decl.*, Dkt. 103-3. That Fisher actually *did* pose a threat to Plaintiff is not relevant to the subjective prong of an Eighth Amendment analysis, which requires a plaintiff to show that the defendants were subjectively aware of that risk and yet deliberately disregarded it.

Because Defendants have met their initial burden of showing that they did not act with deliberate indifference to the risk posed by Fisher, the burden shifts to Plaintiff to establish a genuine dispute of material fact. Plaintiff has failed to do so.

Plaintiff does not believe Defendants' statement that they did not find Plaintiff's complaints about threats by Fisher to be credible. *See Pl. Memo. in Opp. to Mot. Summ. J.* at 5 ("The … grievance response from Mr. Dietz was a false afterthought in an attempt to avoid liability …."). But Plaintiff's own belief that Defendants lied about what they subjectively knew is insufficient to create a genuine dispute of material fact. Plaintiff has submitted no admissible evidence

from which a factfinder could reasonably infer that Defendants actually drew the inference that Plaintiff was at substantial risk of serious harm. *See Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) ("[T]he prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'") (quoting *Farmer*, 511 U.S. at 837).

It is unfortunate that Defendants did not believe Plaintiff's reports of Fisher's threats before the February 26 incident. But that is not enough for Plaintiff to meet the strict standards of Eighth Amendment liability. *See Gibson*, 290 F.3d at 1188 ("If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment …."). Because Defendants have provided evidence showing that they did not act with deliberate indifference, and because Plaintiff has not rebutted that evidence, Defendants are entitled to summary judgment.

## 4. Conclusion

For the reasons explained above, the Court concludes that there is no genuine dispute of material fact and that Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' Motion for Summary Judgment will be granted.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion to Reopen Discovery and to Compel Disclosures (Dkt. 138) is DENIED.

2. Plaintiff's Motion for Appointment of Counsel (Dkt. 139) is DENIED.

3. Defendants' Motion for Summary Judgment (Dkt. 103) is GRANTED, and judgment will be entered in favor of Defendants.

DATED: August 28, 2026

B. Lynn Winmill
U.S. District Court Judge